## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| ROBERT MOIR, II, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | File No. _____ |
| ) | |
| ) | |
| MERCHANTS ASSOCIATION ) | |
| COLLECTION DIVISION, INC., ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| _____ ) | |

## VERIFIED COMPLAINT FOR DAMAGES AND INCIDENTAL RELIEF

COMES NOW Plaintiff ROBERT MOIR, II, by and through his undersigned attorney, and sues Defendant MERCHANTS ASSOCIATION COLLECTION DIVISION, INC., and alleges as follows:

## INTRODUCTION

1.     This is an action for violation of 15 U.S.C. §1692, *et seq.*, more commonly known as the "Federal Fair Debt Collection Practices Act" ("FDCPA"), and Florida Statutes §559.55, more commonly known as the "Florida Consumer Collection Practices Act" ("FCCPA"), which prohibits debt collectors from engaging in abusive, deceptive and unfair practices.

## JURISDICTION

2.     Jurisdiction of this Court arises under 15 U.S.C §1692k and 28 U.S.C.§1337, and supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C.§1367.

1

**PARTIES**

3.      Plaintiff, Robert Moir, II ("Moir") is *sui juris* and a resident of Hillsborough County, Florida.

4.      Defendant MERCHANTS ASSOCIATION COLLECTION DIVISION, INC. ("MAF") is a Florida corporation with a primary business address at 134 South Tampa Street, Tampa, Hillsborough County, Florida 33602.

5.      MAF is registered with the Florida Office of Financial Regulation as a debt collector.

**FACTUAL ALLEGATIONS**

6.      In or about September 2012, Defendant began reporting a  tradeline ("the Tradeline") to the three major consumer credit reporting agencies ("CRA's") concerning a debt alleged to be owed by Moir to Tampa Utilities in the amount of $88.

7.      The reporting of a tradeline is a *per se* attempt to collect the debt alleged therein; see Purnell v. Arrow Financial Services, LLC, No. 07-1903 (6th Cir., Dec. 16, 2008); Horvath v. Premium Collection Servs., Inc., 2010 WL 1945717 (D. Ariz. May 13, 2010).

8.      On or about October 16, 2012, Moir became aware of MAF's reporting, and he telephoned MAF about it.

9.      He spoke with an MAF collector who identified himself as Luis Sanchez ("Sanchez").

10.     Moir told Sanchez that he disputed the MAF report.

11.     Sanchez advised Moir "that's fine, you can dispute it.....it'll be placed into a 'dispute' status, but that won't clear anything up and it will still be out there."

12.     Moir also stated he had been denied a car loan as the result of a collection account on his credit report, and that MAF's collection tradeline was the only negative item on his report.

13.     Sanchez stated to Moir that "there would be no problem" getting a car loan once the item was paid, and that "'they' [i.e. the bank] just want to see that the item has been taken care of."

14.     Sanchez reiterated several times that Moir would be granted a loan as long as Moir paid the $88 to MAF.

15.     Moir stated that he needed to obtain a car loan in the near future, and while he still disputed the debt, he agreed to pay MAF the $88, since MAF had promised that making said payment would ensure he was approved for a car loan.

16.     After the conclusion of the October 16, 2012 phone call, MAF now had reasonable knowledge that the alleged debt it was reporting to the CRA's was disputed by Moir.

17.     On or about October 23, 2012, MAF made a new report to the three major CRA's, Equifax, TransUnion, and Experian, but did not disclose the fact the alleged debt was disputed by Moir.

18.     Through information and belief, had MAF inserted the Metro II code "XB" into field 20 ("Special/compliance codes") when making its report, the CRA's would have

3

published MAF's tradeline with the disclaimer, "CONSUMER DISPUTES THIS INFORMATION."

19.     After paying MAF the $88, Moir was not approved for a car loan.

20.     The reason stated by Railroad and Industrial Credit Union ("the Credit Union") in its denial of Moir's credit application was insufficient credit score, and reported his Experian Fair Issac Model II ("FICO") score to be 630.

21.     Per its legally-mandated disclosure under the Fair Credit Reporting Act, Experian stated the most significant reason why Moir's FICO score was not higher was the presence of a collection account reported.

22.     The report showed eight (8) accounts paid as agreed with no negative history, and one collection account, the tradeline reported by MAF.

23.     The Credit Union stated it was irrelevant that the account reported by MAF was now reported as "paid," as the record of delinquency remained on his report, and that its lending decision was based on the FICO score, not the paid or unpaid status of small-dollar collection accounts appearing on a consumer credit report.

24.     The Credit Union also stated it could not grant a loan to a consumer with that low of a FICO score.

25.     Additionally, Moir's FICO score did not change, even after Moir paid MAF the $88 and MAF reported the account as "paid."

26.     The "creditor classification code" MAF uses to report to the CRA's is "collection agency/attorney."

4

27.     Through information and belief, the FICO credit scoring system does not consider the balance amount, nor the paid/unpaid status, of tradelines classified as "collection agency/attorney," and considers only the presence of the collection on the report, and the date the account originally became delinquent. This perhaps would be akin to an automobile insurance company reviewing a consumer's driving history, where insurance rates are based on the consumer's driving record, and the presence of too many speeding tickets can be grounds for denial of insurance, even if the tickets are paid and settled.

28.     Moir has retained the undersigned attorney to represent him in this action and is obligated to pay him a reasonable fee for his services.

## COUNT I
### (*Violation of the FDCPA*)

29.     Moir realleges and incorporates the allegations contained in Paragraphs 1 through 28 of this Complaint as if fully set forth herein.

30.     FDCPA §807(2)(A) prohibits a debt collector from making any false representation in connection with the collection of a debt, including the false representation of the character of any debt.

31.     FDCPA §807(10) prohibits a debt collector from using any false representation or deceptive means to collect or attempt to collect a debt.

32.     FDCPA §807(8) prohibits a debt collector from communicating credit information which is known or should be known to be false, including the failure to communicate that a disputed debt is disputed.

33.     By falsely claiming that Mr. Moir would be granted a car loan if he paid MAF

5

the $88 it sought to collect, MAF violated the FDCPA at FDCPA § 807(2)(A) and FDCPA § 807(10).

34.     MAF had reasonable knowledge that Mr. Moir disputed the debt, and was paying it only because it was a small amount of money and such payment would ensure him a car loan.

35.     Thus, when MAF communicated information regarding Mr. Moir's credit to the CRA's on or about October 23, 2012, and failed to include the fact the debt was disputed by Mr. Moir, it violated the FDCPA at § 807(8).

36.     Mr. Moir paid MAF the $88 solely because of MAF's express promise that such payment would secure him a car loan, and for no other reason.  Such payment can be considered an actual damage pursuant to the FDCPA.

37.     As a direct and proximate result of the violation of the FDCPA by MAF, Moir has been damaged.  The damages of Moir include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment and damage to the credit and credit reputation of Moir.

38.     Pursuant to 15 U.S.C. §1692k, Moir is entitled to recover actual damages together with statutory damages of $1,000.00, together with court costs and reasonable attorneys fees.

**WHEREFORE,** Mr. Moir demands judgment against MAF for:

a.     Statutory damages of $1,000.00 pursuant to the FDCPA; and,

b.     Actual damages of $88; and

6

c.  Other unspecified actual damages; and,

d.  Reasonable attorneys' fees pursuant to the FDCPA; and,

e   Costs pursuant to the FDCPA; and,

f.  Equitable relief enjoining MAF from further violations of the FDCPA; and,

g.  Such other relief that this Court deems just and proper.

## COUNT II
### (Violation of the FCCPA)

39.  Moir realleges and incorporates the allegations contained in Paragraphs 1 through 28 of this Complaint as if fully set forth herein.

40.  At all times material hereto, the alleged Tampa Utilities account constituted a "debt" or "consumer debt" as said terms are defined under Florida Statutes §559.55(1).

41.  At all times material hereto, Moir was a "debtor" or "consumer debtor" as said terms are defined under Florida Statutes §559.55(2).

42.  At all times material hereto, MAF was a "debt collector" as said term is defined under Florida Statutes §559.55(6).

43.  FCCPA §559.72(6) states that, "no person shall: disclose information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact."

44.  Despite MAF's knowledge that Mr. Moir had reasonably disputed the debt, MAF failed to include this information in the reports it made to the CRA's on or about October 23, 2012.

7

45.    As a direct and proximate result of the violation of the FCCPA by MAF, Moir has been damaged.

46.    Moir's damages include but are not necessarily limited to mental pain and shock, suffering, aggravation, humiliation and embarrassment and damage to Moir's credit and credit reputation.

47.    Pursuant to Florida Statute §559.77, Moir is entitled to recover actual damages together with statutory damages of $1,000.00, reasonable attorneys' fees, and court costs.

**WHEREFORE,** Mr. Moir demands judgment against MAF for:

a.    Statutory damages of $1,000.00 for violation of the FCCPA; and,

b.    Unspecified actual damages; and,

c.    Reasonable attorneys' fees pursuant to the FCCPA; and,

d.    Costs pursuant to the FCCPA; and,

e.    Equitable relief enjoining MAF from further violations of the FCCPA; and,

f.    Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff ROBERT MOIR, II, pursuant to Rule 38, Federal Rules of Civil Procedure, demands a trial by jury of all issues so triable.

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA                    )
COUNTY OF HILLSBOROUGH     )

Pursuant to 28 U.S.C. § 1746, Plaintiff ROBERT MOIR, II, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1.   I am the Plaintiff in this civil proceeding.
2.   I have read the above-entitled civil Complaint prepared by my attorney and I believe that all facts contained in it are true, to the best of my knowledge, information and belief.
3.   I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4.   I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s) named in the Complaint.
5.   I have filed this civil Complaint in good faith and solely for the purposes set forth in.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   ___03___   ___21___, ___2013___
                     Month          Day              Year

Signature:   _____ROBERT MOIR, II_____

   **SWORN TO AND SUBSCRIBED** before me on this 21st day of March, 2013, by ROBERT MOIR, II, who ☐ is personally known to me, or who ☒ has produced her Florida Drivers License # M400-767-87-093-0   as identification, and who did take an oath, and attested that all of the facts and allegations contained in the foregoing Complaint are true and correct.



_____Kelly Phipps_____
Notary Public

KELLY PHIPPS
MY COMMISSION # EE 107833
EXPIRES: June 28, 2015
Bonded Thru Notary Public Underwriters

9

Respectfully submitted this _3ʳᵈ_ day of April, 2013, by:

Eugene P. Castagliuolo, Esquire
Florida Bar Number: 104360
**CASTAGLIUOLO LAW, P. A.**
801 West Bay Drive
Suite 301
Largo, FL   33770
(727) 712-3333
Eugene@TampaConsumerLawyer.com
*Attorney for ROBERT MOIR, II*